PEOPLE *v.* SERRA.

1. Criminal Law—Res Gestae Witnesses—Indorsement on Information.

   It is the duty of the prosecution to indorse the names of *res gestae* witnesses on the information in a criminal prosecution.

2. Same—Res Gestae Witnesses—Subpoenas.

   In a criminal proceeding it is generally the duty of the prosecution to have a subpoena issued and use the means at hand to procure the attendance of known *res gestae* witnesses at the trial.

3. Same—Res Gestae Witnesses—Common Law—Jurisdiction.

   At common law it is not incumbent upon the prosecution in a criminal case to produce a *res gestae* witness not subject to the process of the court if he refuses to attend voluntarily.

4. Statutes—Common Law.

   The construction of a statute is restricted to the apparent purpose stated where the statute is in derogation of the common law.

5. Criminal Law—Witnesses in Other States—Discretion of Court—Statutes.

   Under reciprocity statute providing procedure for commanding attendance of witnesses from out of State at a criminal trial in this State it was not mandatory upon prosecutor to apply to the court of this State for a certificate that such witness is a material witness to the pending cause and direct the certificate to a judge of a court of record in the other State and apply for process under the laws of such other State, such procedure being discretionary and available to defense as well as prosecutor (Act No. 175, chap. 7, § 81, Pub. Acts 1927, as added by Act No. 309, Pub. Acts 1931, and amended by Act No. 246, Pub. Acts 1935).

6. Same—Res Gestae Witness—Showing of Diligence—Statutes.

   Disclosure that *res gestae* witness who resided in New York informed police officer he would be unable to appear at examination of defendants, that a letter was written to him about three weeks before trial but no reply received, and that a subpoena was placed in the hands of an officer but not served *held,* a sufficient showing of diligence to excuse people from producing witness whose name was indorsed on in-

formation, as prosecutor is not required to resort to procedure involved in statute relative to production of witness from out of State (Act No. 175, chap. 7, § 81, Pub. Acts 1927, as added by Act No. 309, Pub. Acts 1931, and amended by Act No. 246, Pub. Acts 1935).

7. SAME—CHARGE TO JURY—PREJUDICE.

The charge to the jury in a criminal case must be read as a whole to determine whether it is prejudicial as its correctness cannot be tested by taking particular facts.

8. SAME—RES GESTAE WITNESS—CHARGE—FINDING AS TO DILIGENCE.

In prosecution for breaking and entering in the nighttime with intent to commit larceny wherein the people failed to produce a *res gestae* witness whose name had been indorsed on the information, statement of court during trial that jury must determine case from testimony offered and not from a lack of testimony was not error in view of subsequent charge that only in case jury determined prosecution had not made a reasonable effort to procure attendance of such witness could it be inferred that his testimony would have been unfavorable to the State had he been produced.

9. SAME—NEW TRIAL—NEWLY-DISCOVERED EVIDENCE—DISCRETION OF COURT.

The granting of a new trial on the ground of newly-discovered evidence is largely a matter of discretion for the trial court.

10. SAME—NEW TRIAL—NEWLY-DISCOVERED EVIDENCE—IMPEACHMENT OF A WITNESS.

A new trial will not ordinarily be granted because of newly-discovered evidence to impeach a witness.

11. SAME—NEW TRIAL—NEWLY-DISCOVERED EVIDENCE—DIFFERENT RESULT.

A new trial will not ordinarily be granted where it cannot be said, in the light of the record, that the newly-discovered evidence would probably cause a different result to be reached on another trial.

12. SAME—NEW TRIAL—NEWLY-DISCOVERED EVIDENCE—IMPEACHMENT OF IDENTIFYING WITNESS.

In prosecution for breaking and entering in the nighttime with intent to commit larceny, alleged newly-discovered evidence that identifying witness erroneously stated that he had never talked to affiant about the case or stated that affiant was present in police station when one of defendants had been identified by witness *held*, not to require a new trial as it cannot be said identifying witness was so seriously impeached as to make probable a different result on a new trial.

13. SAME—MISLEADING REQUEST TO CHARGE—STATUTES—WITNESS IN OTHER STATE.

Defendant's request to charge that jury had a right in determining whether or not prosecution used due diligence in attempting to produce an out-of-State *res gestae* witness to consider that such witness might have been produced by following procedure for such purpose provided by statute was properly refused where request was misleading in that jury would have been justified in assuming that if the people invoked the statute they could clearly bring the witness before the court and that it was available only to the people while, in fact, it was available to defendants as well (Act No. 175, chap. 7, § 81, Pub. Acts 1927, as added by Act No. 309, Pub. Acts 1931, and amended by Act No. 246, Pub. Acts 1935).

14. SAME—ARGUMENTATIVE REQUEST TO CHARGE—IDENTIFICATION.

Request to charge in prosecution for breaking and entering in the nighttime with intent to commit larceny that there are inherent dangers to identification when witness is called for the express purpose of identifying some certain person as an alleged criminal rather than permitted or required to pick a person out of a group was properly refused since it dealt with the weight of the evidence and was argumentative (3 Comp. Laws 1929, § 17322).

15. SAME—JUDGE'S COMMENT ON EVIDENCE.

In a criminal case the court is required to comment on the evidence only as in his opinion the interests of justice require (3 Comp. Laws 1929, § 17322).

16. SAME—RESPECTIVE FUNCTION OF COURT AND JURY AS TO EVIDENCE.

It is the province of the court to determine what testimony is admissible, and of the jury to determine weight to be given it.

17. SAME—ADDITIONAL INSTRUCTIONS.

Additional instruction to jury after it had retired and requested further instruction that jurors must get the true facts of the case from testimony given from the witness stand was not erroneous as causing jurors to believe anything said by *res gestae* witness not produced could not be considered because he was not produced when such portion of charge is considered in connection with charge as a whole.

18. SAME—SECOND SUPPLEMENTAL CHARGE—REASONABLE DOUBT.

Second supplemental charge that court could not tell jury any more, that he could not tell what verdict to bring in and that they must get the case from testimony given from witness stand, was not error as telling jury no reasonable doubt could arise from a lack of testimony.

Appeal from Wayne; Moll (Lester S.), J. Submitted January 15, 1942. (Docket No. 73, Calendar No. 41,688.) Decided March 17, 1942.

John and Salvatore Serra were convicted of breaking and entering in the nighttime with intent to commit larceny. Affirmed.

*Frank G. Schemanske,* for appellant John Serra.

*Sidney Sherman,* for appellant Salvatore Serra.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *William E. Dowling,* Prosecuting Attorney, and *Ralph E. Helper* and *A. Tom Pasieczny,* Assistant Prosecuting Attorneys, for the people.

BOYLES, J. Defendants were convicted by jury of the crime of breaking and entering a dwelling house in the nighttime with intent to commit larceny. The several errors complained of depend primarily on the answer to one question, Was it error for the prosecution to fail to produce at the trial one Harry Briggs, a *res gestae* witness whose name was indorsed on the information?

The breaking and entering is alleged to have been committed on the second floor of an apartment building occupied by Mr. and Mrs. DeLoria as tenants, who were not at home when the offense was committed. Mr. DeLoria was in the apartment below, visiting with its occupant, one Harry Briggs. DeLoria heard footsteps above, went upstairs, discovered the defendants in his apartment, attempted to detain them, and one of the defendants in trying to escape from the building ran into the doorway of the Briggs apartment on the first floor. Mr. Briggs attempted to detain him there, a scuffle en-

sued, and the man escaped. One of the defendants claimed an alibi and Briggs' testimony became important, on the question of identity.

DeLoria positively identified both defendants. A woman with whom Salvatore Serra was living testified he was at her home at the time of the alleged offense.

The information charges the offense was committed January 10, 1939. John Serra was arrested later the same night. On June 14th, when an examination was started before a magistrate, it developed that Harry Briggs was not available as a witness. An adjournment was taken so that Briggs might be brought in. Defendants were then represented by the same counsel who later tried the case in circuit court. At some stage of the proceedings before the magistrate, defendant Salvatore was apprehended and brought before the examining magistrate. The examination was not concluded until August 15, 1940. An effort was made to locate Briggs while examination before the magistrate was pending. Prior to August 15, 1940, Briggs was located in Buffalo, New York. He was contacted but informed the police officer he would be unable to appear. After the examination and about three weeks before trial in circuit court, a letter was written him but no reply was received. At that time, his address was U. S. Immigration, Buffalo, New York. His name was indorsed on the information, a subpoena issued and placed in the hands of an officer but not served. Before the trial in circuit court was begun, the prosecuting attorney stated he would make a showing why Briggs was not present. The above facts were disclosed on the record. No request for delay was made by counsel for defendants, and the trial before the jury was concluded.

Defendants contend that the prosecution did not exercise due diligence in attempting to produce Briggs, relying on Act No. 175, chap. 7, § 81, Pub. Acts 1927, as added by Act No. 309, Pub. Acts 1931, and amended by Act No. 246, Pub. Acts 1935 (Comp. Laws Supp. 1940, §'17293–2, Stat. Ann. § 28.1021), the applicable paragraph of which is as follows:

"If a person residing or being within any other State, which by its laws has made provision for commanding persons within its borders to attend and testify in criminal prosecutions in this State, is a material witness in a prosecution pending in a court of record in this State, a judge of such court may issue a certificate alleging these facts and direct the same to a judge of a court of record in the State in which the witness in question resides or is. If such certificate is issued the sum of ten cents a mile for each mile by the ordinary traveled route to and from the court where the prosecution is pending and five dollars for each day that he will be necessarily absent from the county where subpoenaed shall be tendered to such witness."

It is conceded that the prosecution made no attempt to procure the return of Briggs from New York under this statute. Was the failure to do so reversible error? It was the duty of the prosecution to indorse Briggs' name on the information. He was a *res gestae* witness. It was also the duty of the prosecution to have subpoena issued and use the means at hand to procure the attendance of Briggs at the trial. *People* v. *Van Vorce,* 240 Mich. 75; *People* v. *Zabijak,* 285 Mich. 164. The general rule in Michigan is that the people must produce in court all known *res gestae* witnesses. However, this rule is not without exceptions. *People* v. *Raider,* 256 Mich. 131. One of the well-established exceptions is

that a witness who is not subject to the process of
our courts need not be produced if he refuses to at-
tend voluntarily. It is not error for the court to re-
fuse to compel the prosecution to call witnesses
whose names are indorsed on the information who
are not within the State and answerable to process
of the court. *People* v. *Berry*, 107 Mich. 256; *People*
v. *Marcus*, 253 Mich. 410. Does the 1931 statute,
*supra*, change the common-law rule? It does not
in express terms impose any duty on the prosecutor
to apply to the court for a certificate, or to make
application to a judge of a court of record in an-
other State for any process under the laws of that
State. It imposes no mandate that the court of
either State shall act—the issuance of the certificate
is discretionary. Seemingly, either the prosecu-
tion or the defense may avail itself of the procedure
offered.

Where a statute is in derogation of the common
law, its construction is restricted to the apparent
purpose stated.

"The legislature should speak in no uncertain
manner when it seeks to abrogate the plain and long-
established rules of the common law. Courts should
not be left to construction to sustain such bold in-
novations." *Bandfield* v. *Bandfield*, 117 Mich. 80
(40 L. R. A. 757, 72 Am. St. Rep. 550).

It is conceded that New York has a somewhat
similar "uniform act to secure the attendance of wit-
nesses from without a State in criminal proceedings"
(New York Code Crim. Proc., § 618–a [66 McKin-
ney's Consolidated Laws New York, § 618–a]). Such
legislation has been passed upon by inferior New
York courts but not by the New York court of last
resort. It was held unconstitutional in *Re Common-*

*wealth of Pennsylvania,* 45 Misc. 46 (90 N. Y. Supp. 808), and upheld in *Commonwealth of Massachusetts* v. *Klaus,* 145 App. Div. 798 (130 N. Y. Supp. 713). It was also held unconstitutional in *Re People of New York,* Court of Quarter Sessions, County of Philadelphia, December 6, 1940. (See 19 North Carolina Law Review, p. 391 [April, 1941].) The New York reciprocal statute, *supra,* provides that when a certificate of request is presented to a New York court, notice is given to the witness and the judge determines at a hearing whether the witness is material and necessary, and "that it will not cause undue hardship to the witness to be compelled to attend and testify in the prosecution." A reluctant witness might insist upon full adjudication throughout the courts of New York. Lapse of time and failure of funds might likely cause a failure of justice.

The Michigan law does not make it mandatory that the prosecution apply to the court in another State for process to compel return of a witness to this State. The procedure is optional with either the prosecution or the defense. In the case at bar, the defendants had full knowledge, and equal opportunity. The showing of diligence was sufficient to excuse the people from the requirement to produce Briggs as a witness. The prosecutor is not required to resort to the procedure referred to in this statute.

Was it error for the court to state during the taking of testimony, with reference to the failure of the prosecution to produce Harry Briggs, a *res gestae* witness:

"As I say, you have got to determine this case from the testimony that is offered here, not from a lack of testimony, but from the testimony."

This statement was made in connection with an explanation by the court that it is the duty of the people to produce *res gestae* witnesses, that the defense has the right to expect those witnesses will be produced, that the State must show guilt beyond a reasonable doubt. The court said:

"As I say, you have got to determine this case from the testimony that is offered here, not from a lack of testimony, but from the testimony. Now, depending on what the situation that is developed with reference to Mr. Briggs as a witness, I will charge you further."

The court charged the jury:

"Where a *res gestae* witness is not produced, if you find that a reasonable effort was not made to produce him, then you may infer from the nonproduction of the witness that his testimony would not be favorable to the State. In other words, there has been some discussion here as to the failure of the State to produce Harry Briggs. * * * The fact that he is not here may or may not mean that you can resort to the inference. That depends on whether you feel from the testimony that there was a reasonable effort made to locate him and procure his attendance. If there was such a reasonable effort made that satisfies your standards of reasonableness under the circumstances, then you may draw no inference from his nonappearance. Confine yourselves only to such testimony as there is. But if you are dissatisfied with the reasonableness of the efforts made to produce that witness, then you may infer that his testimony would not be favorable to the State had he been produced."

The charge must be read as a whole to determine whether it is prejudicial. The correctness cannot be tested by taking particular parts. *People* v. *Williams,* 208 Mich. 586. Taking the charge as a

whole, it is clear that defendants' rights were fully preserved. The jury was fully instructed on the burden of proof and the presumption of innocence. The only "lack of testimony" upon which defendants could possibly rely to create a reasonable doubt is the failure of Briggs to testify, and this was fully and properly covered in the charge. This claim of error is without merit.

Defendants assign as error that the testimony of the sole identifying witness was seriously impeached by the affidavits of Mr. and Mrs. Briggs subsequently produced by defendants as ground for new trial. DeLoria denied that at any time he had ever talked to Briggs about this case. The affidavits stated the contrary. Also, DeLoria stated that Briggs was present in the police station when John Serra was identified by DeLoria. This was denied in the affidavit. Counsel do not state what is the object of their assignment of error but, since these affidavits were not used on the trial but only on the motion for a new trial, it must be for the purpose of a new trial on the ground of newly-discovered evidence. The granting of a new trial on the ground of newly-discovered evidence is largely a matter of discretion for the trial court. *Grossman* v. *Langer,* 269 Mich. 506. A new trial will not ordinarily be granted because of newly-discovered evidence to impeach a witness. *Spray* v. *Ayotte,* 161 Mich., 593. Nor should there be a new trial where it cannot be said, in the light of the record, that the newly-discovered evidence would probably cause a different result to be reached on another trial. *Luckhurst* v. *Schroeder,* 183 Mich. 487. The fact that the identifying witness had talked to Briggs about the case, or had erroneously stated that Briggs was in the police station when Serra was identified, cannot be said to impeach him so seriously as to make it

probable that there would be a different result on another trial. On this record, it cannot be said that there was an abuse of discretion in the denial of the motion for a new trial on the ground of newly-discovered evidence.

It is claimed that it was error to fail to give the following requested charge:

"I charge you ladies and gentlemen of the jury, that you have a right in determining whether or not the prosecuting attorney's office and the police officers exercised due diligence and care in attempting to produce Harry Briggs as a witness, to take into consideration the fact that it is conceded that the provisions of section 17293, paragraph 2 of 'Mason's 1940 Cumulative Supplement' of the 'Compiled Laws of Michigan for the year 1929' as amended by Act 246 of 'Michigan Public Acts for the year 1935' paragraph 1, were not invoked. I charge you that under that statute the prosecuting attorney's office might· have produced the witness by following the procedure set forth in that act."

The request was properly refused. The court had no way of knowing whether the prosecution might have been successful in following the procedure. The requested charge is misleading. From it, the jury would be justified in assuming that if the people invoked the statute they could clearly bring the witness before the court. Since it is doubtful if the New York statute will be held constitutional by the New York court, it is not at all clear that Briggs would have been brought before the court even if the statute had been used. The requested charge is further misleading in that it makes it appear that the statute was available only to the people, while, in fact, it was available to the defendants as well.

In his separate brief, defendant John Serra claims that the court erred in refusing to grant his requests

to charge numbered 4 and 5. These requested charges are in substance that there are inherent dangers to identification when the witness is called for the express purpose of identifying some certain person as an alleged criminal, rather than permitted or required to pick a person out of a group. On this question, the court charged:

"There has been some claim here that the identification was made of John in the police station when he was there only in the presence of police officers. Well, there is no law that requires any particular method of identification. You are at liberty, as I said, to examine into all the circumstances of the case, all the testimony as bearing on the question of identity."

The requested charge deals with the weight of the evidence. The court is required only to make such comment on the evidence *as in his opinion* the interests of justice require. 3 Comp. Laws 1929, § 17322 (Stat. Ann. § 28.1052). This statute imposes no duty upon the court to comment upon the facts. *People* v. *Wallin,* 55 Mich. 497. It is the province of the court to determine what testimony is admissible, and of the jury to determine the weight to be given it. *People* v. *Goodrode,* 132 Mich. 542. The requested charge is argumentative and, for that reason, improper. *People* v. *Brown,* 142 Mich. 622, and cases there cited.

Defendants complain of the following occurrence when the jury asked for further instructions:

"*A Juror:* I would like to ask this: and we are not supposed to take anything under consideration, only just what was said in this courtroom;      *      *      *

"*The Court:* That is right. You have to get the true facts of the case from the testimony given from the witness stand."

Counsel for defendants contend that this caused the jurors to believe that anything Briggs said would not have any bearing on the case because Briggs was not produced as a witness. This statement made by the court must be considered in connection with the rest of the charge. The jury had retired, and when they came back the foreman asked if one of the officers had stated that Mr. Briggs had told him that he could not identify the defendants. The statement of the court to which defendants object was:

"You have to get the true facts of the case from the testimony given from the witness stand. In other words, the story is unfolded to you. It is a true story or it is a false story, depending on what credence you place on the testimony of various witnesses. You were not there. I was not there. We were not at the scene of the crime; we were not at the examination; we were not in the police station; we were not outside at the place of the arrest, and so forth. So what we know about the case is what is related to us from the witness stand; and of course you can always take the physical circumstances of the case into consideration. * * *

"But you are required to arrive at the facts from the testimony. If that were not true, we would decide cases possibly on our own experiences, our own prejudices or something of that kind. All we are called upon to do is to analyze the story that was given to us here in this courtroom."

We find no error in this charge.

It is argued that the court erred in his second supplemental charge when he said:

"I can't tell you any more than what I have told you on that. I can't tell you any more. I certainly cannot tell you what verdict to bring in. I will tell you again, or I will tell you finally, that you have to decide the facts in this case, as I have outlined the

whole action to you, from the testimony that was given off this witness stand.''

Defendants contend that this was telling the jury that a reasonable doubt could not arise from a lack of testimony. This matter of reasonable doubt was fully covered by the charge as a whole. There is no basis for this claim of error.

Conviction affirmed.

Chandler, C. J., and North, Starr, Butzel, Bushnell, and Sharpe JJ., concurred. Wiest, J., did not sit.